May it please the court. My name is Robert Smith. I represent the plaintiff Carla Domingo, you're gonna have to raise the level of your voice. That's mostly a recording instrument there. All right. Thank you I will try and do that. Okay, the first thing I should I should say is I do have a hearing problem and If the court asks questions of me I may have to ask you to repeat the question several times because I might not get it What I thought I would do this morning is to talk about some of the factors or aspects of this case Which may be different or at least not the same as many of the other cases I did submit a Letter with additional citations of some nine cases. I didn't file it in triplicate and it wasn't a week before But I hope you've received it and I'll have to have guidance from the court whether I'm to argue the cases or Say where they fit in the recent cases decided since my reply brief was filed about nine of them if you're comfortable in Mentioning them in the proper context. Go ahead. All right. Thank you And once I talk about some of the novel or different aspects of this case Then I can talk about some of the legal issues involved First of all many of the cases Decided after Greentree Foundered over the lack of proof of what the costs were what the real cost of arbitration were and That's probably because many of the litigants before the courts and later appeals Didn't have Greentree to deal with at the time those cases were heard by the trial courts And so the proof was often has often been found lacking That I think is not the case with our situation because we have provided proof to the trial court of The possible cost of a seven-day arbitration being in excess of twenty thousand dollars for my client and it's broken down in various categories including the flying of witnesses and herself and her counsel from Hawaii to California where arbitration is required under the arbitration agreement So, I think the proof is before the court it was before the trial court and Ameriquest has made no objections to that proof There's no contrary proof and there's no opposition to the record proof in any of the appellate briefs So that issue I think is not before the court that is to say the record Contains adequate proof of what the cost of arbitration would be for my client and also her financial situation Both of those subjects are covered A Second aspect which is different in this case than most other cases is how the trial judge Dealt with the unfair what we regard as the unfair provisions of the arbitration agreement We do not have a situation as in Greentree where there was silence on the issue of who pays what? Instead one of the provisions in addition to the forum provision about where the arbitration would take place Was a cost or fee putting splitting provision right in the arbitration agreement Which said my client pays for one half and that's part of our record proof as to what composes that one half So we do not have a situation of silence We therefore have an express provision on it And so somehow that provision has to be taken care of either by holding it void and unenforceable or by some other means Judge Ballway Elected to deal with it In a very different way than in most situations she Asked Ameriquest to stipulate at the oral argument in the trial court that it would pay all costs you need to arbitration and Ameriquest agreed with that and Even though we have made it clear that we reject any unilateral modification of the arbitration agreement Judge Mall we went ahead and said all right. This is what Ameriquest will do So I'm ordering that agreement on this part performed and Ameriquest must pay all the costs Now our problem with that is that the are those the costs that you refer to at pages eight and nine Of your brief. Yes, they are and am I correct in understanding that? Domingo contacted you before the one-year Statute had run. Yes, but that you did not file until after that had run I'm not agreeing that it was an effective statute, but the one-year called for in the agreement that's right, and and you did not file because your client could not come up with the Cost of the arbitration, that's right I'd asked her to deposit five thousand dollars six thousand dollars in my trust account and until she did that we did not file Now you were representing her. Yes, I was at that time Yes And we had letters going to Ameriquest making initial inquiries into the facts and asking for documents and so forth and she had written a eight-page letter while she was suspended in her Outlining her various Reasons for protesting what was going on at Ameriquest the illegal loan transactions I was not as if Ameriquest didn't know about what was coming. They did I must tell you That is just you know, we don't confer before we come in here on the merits of the cases Just as one judge. I am extremely troubled by the fact that you would undertake a representation But not do what was necessary to at least try to protect your clients interest because of monetary arrangements Now this is very troubling. Well, it's troubling to me your honor. I agree with you Especially when it turned out that when you did file You know in district court the judge ordered the other side to cover these fees. Is that correct? The judge ordered the other side to cover the cost. Yes cost. That's right The cost of the issue between you and your client was not fees, right? It was these costs My requirement of my client was that she fund the cost or at least enough of them that we could undertake the case But that's the sixth hour when your brief says Although counsel then commenced to work on the case there were financial arrangements which Domingo had to make to cover anticipated litigation cost Bracket not fees close bracket in order for her case to be filed. Yes. What were those? What was it? What were the litigation cost described in your brief? It was my estimate of what it would require to pay her expert witnesses and take depositions At the time I set that requirement of $6,000 in my trust account. I did not know about all these various rules Concerning the arbitration expenses the fees of the arbitrator the reporter and so forth that I learned later on So I had not asked that she fund that part of it. I didn't know about that part of it if there had been a legal statute of limitations About to run had it been and not just the contract Would it be all right to tell your client? I represent you But I will let the statute of limitations run unless you pay some money into my trust account No, of course not your honor. Well, if did you not run that risk here if this is a valid Agreement, I did and not not a not a now not a knowing running of the risk, but that's what happened if I am Have stock interest in your insurer Can I sit on this case? Yes, you could you don't think your insurer would have an interest in whether that letting this year a run would Expose them to a claim of your client, of course Well, I can't sit on a case where an interested party is one that I have a stock interest in And wouldn't that make your insurer an interested Party that ought to be disclosed to the court You're saying shouldn't my insurance company be before the court? No but shouldn't the judges know whether your insurance company has an interest in the outcome of the case so that we can determine whether we call the Qualified or disqualified. Well, as a matter of fact your honor. I don't carry insurance. So it's a moot point Point but if you're if your honor is suggesting I have culpability. Yes, of course I do I can only say that at the time I first began working on the case It was within a month or two of her discharge and at that point there was no issue about the one-year statute then Circumstances changed and she took over a year to fund the trust fund And in the meantime the one-year statute cropped up as a problem and now I have to deal with it Have you self-reported this to the state bar of Hawaii? No, I have not You think you should? My own potential malpractice your honor Yes, I don't know. I don't think so. I'm not aware of that kind of obligation It is the matter of ethics. It's a matter of whether I have exposure or liability for Something I'm you don't think the state bar the licensing authorities in Hawaii would have any interest in what happened In a potential attorneys in a potential malpractice case. No, I don't think so. I Don't think that's routine to advise the bar of a malpractice filing if there was one Well, I'm not I'm suggesting. Do you think you have any obligation to self-report to the state bar of Hawaii? What we've just been talking about no, I'm sorry I'll practice claim or not No, I I don't think I do. I'm not I don't okay. I See that as an ethical issue, I'm sorry on the statute of limitations question raised by Judge Hawkins If the Say the contract as a whole Was determined to be unconscionable But the statute of limitations provision itself was not determined to be unconscionable Would you apply the statute of limitations? Provision independently, even though the contract was determined to be unconscionable. Well, I certainly hope not and that's why I'm here And my position is if the whole arbitration agreement is permeated with unfair provisions as I believe it is No, you wouldn't say you wouldn't say it's severable. In other words once once you decide the contract as a whole is Unconscionable then no part of it would be enforceable Yes, and the statute of limitations would fall with the rest of the contract it's not because there's permeation Because there's a failure of the primary purpose to provide a fair playing field. I Think the authorities justify no severance in that situation One of the issues That we deal with Which may be somewhat different from other cases Is the question of the applicable law Ameriquest has raised a big fuss about that in their briefs by saying as Judge Malway said that she was limited to simply looking at what Hawaii law was and I've made a point to try to suggest that that's not so because we deal with federal common law federal substantive law under the FAA and That means that any case decided by whether whether a state or federal court Anywhere in the country under the FAA is part of that federal substantive common law and so I think no court dealing with such a case as this wears blinders on what they can look at and see and It's fair game to look beyond the borders of Hawaii To what is happening all over the country on this issue if you look at the Brown decision itself Which is the Hawaii Supreme Court case that we're dealing with It made the same comments about the federal substantive common law as Judge Posner did in the Cigna case and the Brown case cited decisions by Well all the Supreme Court decisions and then decisions from California, Georgia, Indiana Kansas, New York, Texas and Washington as well as federal authority So it went beyond its borders to shape what it viewed as the law and the same thing for Armand Dara's in, California Justice Moss went outside of California and cited Graham oil by the by this court Shankle by the First Circuit Rosenberg by the First Circuit And Palladino by the Eleventh Circuit Williams by the Fifth Circuit Kovalevsky by the Seventh Circuit it went likewise beyond the borders of California to shape the law so I don't think we're limited at looking at what Brown says, but if we were and Brown is the only case we look at the question then is what would the Cal what would the Hawaii Supreme Court do? All we know in Brown is that in Brown it did not find that the Employee was was disadvantaged by the arbitration agreement. It said there was no proof of unfairness But what the Supreme Court do in Hawaii the White Supreme Court with that issue what you look at to determine unfairness Would it not look outside its borders to see what other courts? Around this whole country are doing and what kinds of provisions they are holding to be unfair and what they're not And I think the answer is clear that they certainly would look beyond their borders to to look at that question The last thing I'd like to cover is what is the true fact concerning Whether litigation or arbitration is most costly which is most costly in the opening brief I suggest that we've been dealing with Statements from courts early on in the arbitration business saying oh, we all know that litigation is far more expensive and I've suggested the paradigm for that is when both sides are Large law firms billing on the hourly basis and charging their clients as they go that paradigm does not hold true for Litigation in the employment context for wrongful discharge or for title 7 or whatever it is And I've suggested in the opening brief that what does hold true this is contingent fee litigation Whereas in my case, I've asked my client to pay the costs and so you have to look at what the real expenses are to a litigant who is required to arbitrate and what those costs really are on the Understanding that the client is going to have to pay those costs Now the Morrison case in the Sixth Circuit just a few months ago with one of those I cited in my letter to the court Talks about contingent fee litigation. It's the only case I've seen which does that But the assumption made by the Sixth Circuit and Morrison is that the contingent fee plaintiffs lawyer is putting up all the costs and fronting All the costs now that may happen for some contingent fee lawyers But I don't think it does for a great many others including myself where we asked the client to pay those costs so Don't you have costs in litigation as well as in arbitration? No, not the same, you know very depositions when you litigate a case Yes, and we're not talking about the deposition costs That's not part of our list of costs, which judge Moway ordered America's to pay The significant costs are in our case are the travel expenses to get from Hawaii to California the airfare for My client me and maybe ten witnesses. I did I must confess I just do not understand your argument or your position. You start with this question Was your clients claim, right? Any time after November 30 1999 when she was terminated I'm sorry, what you like was your clients claim right at any time after November 30 1999 I'm sorry, what you claim? What after that was the you know what the word right means? Oh, yes I'm sorry. It was your clients claim right after 113099 certainly Yeah, and so at any time the next day or the next week at any time within a year after November 30 1999 you could have gone to district court in Hawaii and did exactly what you did after June 28 2001 yes, okay, and the only thing that impeded you from doing that was your Concern reflected by your requirement of your client that she deposit money for the cost of Arbitration in your trust fund right yes, you travel to Hawaii depositions and the like yeah Yet, that's exactly what you were trying to avoid by going to district court and exactly what you want this court To say right no not you want us to tell judge Moway that this Arbitration agreement should not be enforced right that's right because it's unconscionable and one of the aspects of its Unconscionability is the one-year statute of limitations. That's your position isn't it yes it is and you don't think you're prejudiced You put your client in any kind of jeopardy by waiting until June 28 2001 to file yes, I did and you think that's not an ethical problem. No, I don't Okay All right, that's I think my time and thank you all right. Thank you That's the question Good morning your honors Elizabeth Murphy appearing this morning on behalf of The defendant Ameriquest Mortgage Company with the law firm Buckhalter Niemir Fields and Younger First of all I want to thank mr. Smith for his his points and for allowing me to be here this morning Most of the issues have been briefed in fact all of them as far as I can see have been briefed With the exception of some of mr. Smith's points regarding subsequent case law which most of which I find to be irrelevant the only case that's come out From this court has been the Ferguson case which is distinguishable as I also I think mentioned in my my brief, but in any event there are just a few points. I want to I want to make this morning First of all the question of controlling law. I think it's it's a straightforward question. I don't know that it really bears additional Discussion, but mr. Smith brought it up, so I thought I would respond Hawaii law applies in this instance I don't disagree that it's appropriate at times to look to other states or other circuits in order to determine Whether there's an appropriate or an applicable case however when you have state law that applies clearly in this case the contract provides and also This court has noted in the Ferguson case that it is appropriate to apply state law to the question of the enforceability of an arbitration agreement such as this and what make of the Refusal of AAA to undertake the arbitration What do I make of it? Well should we make of it? I don't think you need to make anything of it I think the AAA has its own rules and guidelines that it follows that the AAA is an organization That doesn't have any binding authority in this particular instance and its decisions I don't think are relevant at all for purposes of the largest and oldest national Dispute alternative dispute resolution organization Maybe in the world certainly in the United States wouldn't you agree? I would agree your honor and and Ordinarily, they're happy to have parties send matters to them for arbitration right absolutely And since they depend upon Business being referred to them isn't it a bit of an oddity for them to say no we won't undertake this well your honor I don't think it's necessarily an oddity I think the AAA is being careful these days in light of the disparate rulings that we see lately in this issue with regard to the enforceability and particularly the issue of Whether these arbitration agreements are unconscionable. I don't they declined to arbitrate specifically because number one The arbitration agreement here was made an express condition of Domingo's employment correct well, that's one of the reasons yeah, and because it The agreement purported to narrow Hawaii's two-year statute for bringing cases of this kind to one year right well your honor in subsequent cases that I've personally dealt with with the AAA since this Decision was made by the AAA on this case years ago The AAA has reversed its position and is accepting this particular arbitration agreement verbatim exactly the same agreement for Administration from its Fresno office I've actually four or five cases pending currently in that office with regard to this exact same agreement What is your client's position with regard to the? Enforcement if it's enforceable of the one-year statute What is my client's position with regard to the enforcement? I think that our position with regard to that is that the one-year statute of limitations contained in the agreement is enforceable So if we affirm judge Mulway across the board You'll what move to dismiss the arbitration is untimely Well, that would be a Question that we would take up if and when that occurs since we haven't gotten to that point is certainly not waiving That provision if we if we were to affirm the district court to agree with your argument and affirm judge Mulway This matter if to the extent To make Domingo can pursue a claim. It would be within the bounds of arbitration Well, yes, your honor And we certainly are Reserving that right and would probably make that decision at that at the appropriate time and if you were successful on that regard Domingo would have No claim That's correct. And we must assume if we infirm that you will make that motion to dismiss it with otherwise We'd leave it out there and say we affirm if you later do one thing But we don't affirm if you later do the other wouldn't do with it No, we can't write that so we must assume that you will exercise your rights if we give them to you, right? I don't mean give them to me if we affirm that you have them I think that's right but I think it's important for us to focus on the fact that what we're looking at is whether the agreement is enforceable and that is all and I and you know what what comes beyond that and what what happens after this ruling is Is is beyond that is beyond the question of what we're here for today Would I be correct in assuming that there's an ethics component to the bar examination in Hawaii I would assume so although I haven't taken that bar examination your honor. You're not a member of the Hawaii. I am NOT Although I was admitted pro hoc for this particular case. Where are you admitted? I'm admitted in California and in pro hoc in Texas and a few other states Does California place an obligation upon lawyers to report Ethical misconduct occurring within their eyesight. I Believe it does your honor. Have you reported on your opponent? I have not do you think you should I? Might I don't I haven't really you know for me to report an opponent on an ethical violation would take a lot of Thought pre-thought and I haven't yet gone through that process because I was dealing primarily with what was going to happen with the case The rules are different from state to state, but I will tell you in my home state in Arizona It is a separate ethical violation to to not do that in other words Lawyers have been suspended and disbarred for not reporting ethical Possibly ethical misdeeds that they knew about were aware of and didn't report. Is that the case in California? I Don't know, but I would assume so Okay All right, um, anyway, I was speaking about the question of what's what law applies I think it's clear that Hawaii law applies and when we look at Hawaii law, we have a case called Brown versus Kentucky fried chicken It's a wrongful termination case It's right on point and it provides instruction and guidance with regard to this issue of whether this agreement should be enforced or not So Hawaii law applies but not its statute of limitations No, that's correct the statute of limitations set forth in the agreement applies because the parties are free to set their own statute of limitations And Hawaii law again is going to apply to the question of whether the agreement itself is enforceable I think it's important that we just know quickly that under the Brown case the facts were a little bit less Favorable even than they are here and what I'm saying is that that in that particular case the arbitration clause was embedded in a job Application form that was only signed by the plaintiff and the Kentucky fried chicken Court the Brown court in Hawaii held nonetheless that the that the arbitration agreement was fully binding and enforceable in that particular case well, that was that covered whether or not it was entered into When it was embedded in the Application and signed by only one party question. Did they ever enter into one? Yes, now having entered into one you have to look to see whether it's enforceable. That's right. And that has to do with this unconscionable That's right. And that can vary between California and Hawaii it varies from state to state from circuit to circuit It varies from case to case depending on the terms of the particular arbitration agreement in question There is no clear rule on this issue and I'm sure your honors are very well aware of that Looking at the in looking at the agreement. I take it that There's no disagreement that we look at the at the agreement as a whole But in looking at the agreement as a whole do we look at it as written or do we look at it? In the light of the concessions that Ameriquest attempted to make well I think what we're looking at is whether or not to affirm judge Malloway's ruling and judge Malloway's ruling looked at the agreement as a whole in light of Ameriquest Concessions with regard to the fee-splitting provision and the venue provision and I don't know. She didn't her order didn't say she was severing those but the district court has great discretion in determining how to Rule on these things and she merely said that because Ameriquest had offered to concede on those issues That they were moot for purposes of what she was doing in addition to which again Hawaii law controls in this issue and Hawaii law the case of Huff Stands for the proposition that severance is Appropriate in Hawaii as long as you can sever out an offensive provision without doing quote violence To the underlying objectives of the agreement Which is a standard that is far more lenient than the standard even used in here in California into the Armendariz case Which we all know to me like the judge accepted the offer to waive certain parts of it and made a decision based upon that and you'd Be hard-put to Be a stopped to a certain now Having told the judge you wouldn't oh, no, I don't plan to we plan to have this arbitration if it goes forward in Hawaii With Ameriquest bearing all of the fees and costs that miss Domingo would not otherwise have to incur if this case was in our in litigation I'm troubled Although it seems to me. It's just a question that should either trouble or not trouble the Hawaiian courts About the one witness one deposition provision that's pretty tough to choose the one Company employee that you might want to find out what they're going to say Knowing full well that if you find out they're not going to hurt you The company has a half a dozen more that will and you don't know about them I would agree your honor, and that's precisely why the agreement allows the arbitrator to order additional discovery on a showing of good cause the Aren't there cases and I'm asking for information you done this work a good deal of them Well the court lets the case go to arbitration because the arbitrator can carve out any that the arbitrator wants to Carve out anything that the arbitrator wanted anything that He can enforce parts of the agreement and not in force parts that are offensive. That would be The type of thing that in California would make it unenforceable Well, I think the carving out would be done at the stage where a court is deciding whether to enforce the agreement Well if the arbitrator made a ruling That excused one party from a harsh provision They would determine whether they would enforce that agreement. I suppose so one thing once it goes into arbitration. They can do just about anything Well, they are not even bound to follow the law Well, no, that's not not in our case your honor in our case the arbitrary the arbitration agreement specifically says that the arbitrator shall apply Substantive law and the procedural law of the state in which the claim arose and or federal law as the case may be so and if He does so Do they do so correctly or not? He said that's it. Isn't it? Well, isn't that always it? No, we they bring them up here I would hope that the arbitrator that we select in the arbitrator that the triple-a panel would provide us with Would be an arbitrator who would apply the law correctly your honor. Well, I always hope all judges do In looking at the agreement and in you look at a provision that's on its face appears Disadvantageous to the employee like the limited discovery Do you weigh that? In the balance when looking at unconscionability on the assumption that the arbitrator can do something, right? To relieve the employee of the adverse effects of that or you just take it as it's written No I think what you do is you look at the agreement as a whole and with regard to offensive provisions under applicable authority here you Decide whether or not those applicable Those offensive provisions can or should be severed without doing violence to the underlying purpose of the agreement and then pursuant to the party's right to contract Into arbitration, you know, the parties have a right to contract They've signed a contract pursuant to that right you then give it over to the arbitration Authorities and tribunal and and do you let the chips fall in that forum? Now did the district court sever the limited discovery provision? No, she did not So if that order is enforced, it would be up to the arbitrator to walk around that provision. That's correct The arbitrator agreement gives him authority to do that. That's right And it doesn't again. It's not necessarily a limitation, you know, the whole purpose of arbitration recall Is to streamline proceedings and to make things go quicker and more efficiently and so to have a limitation on discovery It's not really a limitation It's just a sort of a guideline that says one deposition per side request for production Your honors are not limited in this particular case and and and The arbitrator can decide to allow more discovery if that's warranted and I think that that's an entirely first of all, it's totally mutual That provision it's not one-sided. It doesn't necessarily benefit one side over the other And the arbitrator can in his or her discretion decide to allow additional discovery on a showing of good cause I don't see how that's unfair one-sided or anything else. I mean, this is arbitration after all Would you agree that We don't give any deference to the district court decision that we review this de novo I do agree that the de novo is the standard but whether or not you decide to give deference to judge Malloway's ruling I suppose is is a matter of your own authority or your own discretion of the novel review, I think Implies no deference. That's right deferential standards of review, right? It does Um, and this is a de novo review. So technically you can scrap her her opinion and start over Am I am I right that what our job is? Is not to decide whether we think something is unconscionable But to decide whether the hawaiian courts would find it unconscionable. That's exactly right And we must predict what they would do with this case I suppose predict, um, but we have some very upon their decisions in the past We have some very nice guidelines and some nice rulings out of hawaii that provide us with a lot of assistance in predicting On of the if we review it de novo, then I suppose we Affect an effector sitting as the district court or sitting in the same place as the district court And we could uh affirm By adding some further severance if we wanted couldn't we Well, I suppose you could In other words, we could sever the statute of limitations provision. You sure could I mean, I don't find it to be unconscionable. I think that um that um There's authority that would uphold that provision In fact, it's it's actually less advantageous to ameriquest than it is to the plaintiff because the eeoc Uh statute of limitations is typically 180 days six months Whereas the agreement in this case allows a year and a claim that might be brought by ameriquest Uh carries a two-year statute of limitations under hawaii law Therefore the agreement actually hurts ameriquest by limiting its rights And it gives the plaintiff additional rights by giving her essentially another six months On her own statute of limitations. You sound like you think you might could get out of it because it's unconscionable out of Like I said, we're going to take that question up after this process is finished Okay All right, did you have another question your honor okay, um Well, there's one more issue that uh council didn't necessarily raise during his opening argument But I think it's an important one and it comes to mind when anybody with A reasonable mind looks at this agreement and that is whether or not the carve-out provision has any negative effect on the enforceability and as briefed Uh, our position is that it does not and as judge malloway stated It's it's really not an issue anyway, because ameriquest's statute of limitations to bring any counterclaim or any claim against mr Mingo has long since passed It had no intention of doing so it has no intention of doing so And so whether or not ameriquest's theoretical right to bring a claim against mr Mingo for Some sort of unfair competition issue is not really a question that we need to be bothered with and that's what judge malloway said in her decision that it wasn't an issue because It's just not on the table if ameriquest had a counterclaim against mr Mingo for unfair competition or if ameriquest had brought a separate case against mr Mingo, then I think we would have something to talk about but again, um looking at hawaii law There's a case a 1993 case the kamaole case um Where it stated that this type of or a carve-out like this Um is particularly is not going to offend the underlying objects of the arbitrate or the agreement As long as there's an important interest motivating its presence in the agreement And in that case the court enforced the agreement notwithstanding the carve-out Um and in the underlying papers that we filed with the district court We provided a declaration of ginger crawford who is the human resources director of the company setting forth the quote business realities That justify the need for that carve-out Although again, it's not an issue in this particular case because we aren't bringing any counterclaim against mr. Mingo and business. What was the case you cited for the proposition that Hawaii law allows the court to sever out the conceded provisions I think you said huff. I did your honor. There's a case in hawaii called huff huff huff Would you like to cite if you have it I do it's in my I have to it's in my brief Oh fine, if it's in your brief, I just didn't hear with it. It's a case. It's a case under hawaii law. Um The issue was a little bit different. It was a question of whether or not state the hawaii state, uh antitrust statute Provides an individual right of action. There was also an arbitration question in that case. Is this ie versus frank huff agency? That's right. That's the case. You're talking. That's right. You're on It was overruled in part on other grounds Which is cited in our brief also but the purpose of the the purpose for us citing this case is because it does stand for the proposition that the Standard under which we do sever sever Unlawful or offensive provisions under hawaii law is a great deal more lenient than the standard we have here in california That is the permeated Standard permeate permeated by unconscionability standards set forth in armandar's and followed in a number of this court's subsequent decisions Again, it's it's we we sever provisions as long as we can do so without doing violence to the contracts essential objects All right, all right I think that's all I have your honors. Are there any other questions? I guess not. Thank you. All right. Thank you very much You had a couple of minutes left, I believe Thank you I'd like to make one comment one comment on the preceding argument and that concerns the Yeah, the technique that judge molly used to accomplish the result of her decision which was As I said to extract the agreement from americas that would pay unique costs And having so agreed judge molly could then say well any question on fairness is moot It's our position in the briefs that that constitutes a rewriting of the agreement That any effort by america to change the terms of the arbitration coming after all of the events post post execution Modification do you object to their giving your client that break? Yes, we did we did and we do we put that on the record you object to They are making the agreement more favorable to your client To to accept the post execution modification Would have been to give up The ability to attack the agreement is void and we could not do that for the reasons the court Has noted and i've been candid to say So do you disagree with uh, your opposing counsel's statement on what the huff case says about allowing review of the contract after Severing the obnoxious provisions. No, I don't agree. I don't disagree on the holding of that case I'm, just saying it was totally inapposite because it's a 20 year old antitrust case It doesn't deal with severance in the employment litigation wrongful discharge context It's just not Not a pertinent authority and there's no other law in california and hawaii that I know of that deals with that issue So we have to look to the Law that best predicts it don't we? Well, you can do it like a 20 year old antitrust case might predict how an employment contract would be interpreted, wouldn't it? You can certainly help us if you're going to take the prediction route Then you certainly would look how else are we going to rule on the case? Just my hunch what I think is good or bad about this contract or what the hawaiian courts think. No your honor I think you're totally free to look outside the borders of hawaii to find out what hawaii would do I'm, sorry, I can look outside of hawaii to find out if I can what hawaiia courts would do with this That's if you're going the prediction route But yes in answer to your question that is one way to solve that other route to go you see Well, the other route as i've said is to just accept the fact this is part of the federal Substantive common law and any case dealing with the severance issue in the employment context under the faa is fair game As part of the authority and just skip the state court's holdings altogether Weigh them as part of the total picture, but but acknowledge the fact that case the huff case was a You're you're extending to me somewhat more authority than I think I have All right. Thank you Thank you case just argued will be submitted And we'll go then to the next case Which is reading against hitachi Mr. Smith on your flight back to hawaii. Can you hear me? All right On your flight back to hawaii You need to ask yourself this question Would I be better off reporting this? To the hawaii state bar myself or having someone else do it Okay, that's right. Thank you. The court of course can do it Think about it I might also add mr. Smith that uh, judge hawkins views on that question are his not necessarily those of the panel I'm, sorry judge hawkins views on the questions. He put to you are his questions and his views not necessarily those of the panel
judges: Hill, Tg Nelson, Hawkins